FABER, Senior District Judge,
dissenting in part and concurring in part:
I agree with the majority that Appellant’s state law claims under California’s Fair Housing and Employment Act (FEHA), Cal. Gov. Code § 12940 et seq., are barred. I also agree that no Title VII cause of action exists against Appellee Vegtel since he has been sued in his individual capacity. I respectfully part company with my colleagues on the issue of whether the district court properly granted summary judgment-to Appellee CRST on Appellant’s Title VII claim that alleges (1) hostile work environment and (2) retaliation. In my view, the opinion of the majority on these points is not supported by evidence on the record and fails to follow the teaching of the United States Supreme Court in relevant cases.
I. Hostile Work Environment
I do not believe that Anderson has offered sufficient evidence from which a reasonable jury could conclude that she was in a hostile work environment. The United States Supreme Court has observed that “[i]f the harassing employee is the victim’s co-worker, the employer is liable only if it was negligent in controlling working conditions.” Vance v. Ball State University, — U.S. -, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 566 (2013). Under such circumstances, “ ‘employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known.’ ” McGinest v. GTE Service Corp., 360 F.3d 1103, 1119-20 (9th Cir. 2004) (quoting Ellison v. Brady, 924 F.2d 872, 881 (9th Cir. 1991)). As common sense tells us, an employer cannot (and should not) be held hable for conduct of which it is unaware. “The employer’s liability, if any, runs only from the time it knew or should have known about the conduct and failed to stop it,” Swenson v. Potter, 271 F.3d 1184, 1192 (2001).
As this Court held in Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000), “an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship.” As the district court in our case pointed out, here there were two primary incidents of harassment over a three-week period, incidents the employer knew nothing about until after the fact. The incidents could hardly become “a permanent feature of the employment relationship” without the employer’s imprimatur. Id. The employer never gave its approval to the harassment Anderson alleges here. Before, during, and after these incidents, CRST has endeavored to eradicate sexual harassment from its company culture. For the same reasons, it is also no answer to suggest that the frequency of incidents notwithstanding, the severity, the physically threatening or humiliating nature of it, and the level of interference with the alleged victim’s work were so high that a reasonable jury could find the conduct actionable under Title VII. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A reasonable jury could not find that CRST’s conduct or inaction was frequent, severe, or physically threatening or humiliating or that it interfered sufficiently with Anderson’s terms of employment.
CRST, when it did learn of Vegtel’s alleged misconduct, took immediate steps to stop it. It prohibited Vegtel from working with female co-drivers, and it attempted to give Anderson new work assign *529 ments that would not require her to team up with male co-drivers. Furthermore, CRST had a policy of educating its employees on the subject of sexual harassment, and a policy and practice designed to prevent the very conduct of which Veg-tel was accused. Vegtel may have ignored what CRST had tried to teach him. The fact that CRST might have done more does not overcome the fact that it did enough to escape liability under Title VII. When “assum[ing] the perspective of [a] reasonable victim,” no reasonable juror would find that the actions CRST took were insufficient to prevent a recurrence or inadequate to remedy what allegedly had happened. Brooks, 229 F.3d at 924 (citing Ellison, 924 F.2d at 879).
Accordingly, I find no hostile work environment for which CRST can be held responsible. All CRST did that could conceivably have contributed to a hostile work environment was to require male-female driving teams to share hotel rooms. To conclude that this practice, while ill-advised, alone created a hostile work environment is to assume that every woman is vulnerable and every man is a cad. See, e.g., United States v. Virginia, 518 U.S. 515, 541, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (disfavoring gender classifications based on “generalizations or tendencies”) (citations and internal quotation marks omitted); Bray v. Alexandria Women’s Health Clinic, 506 U.S. 263, 270—71, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (providing an example of the fact that “women as a class” are not a monolith susceptible of being typecast).
II. Retaliation
I likewise find no evidence in the record to support the conclusion that Anderson was fired because she filed a complaint. To so conclude is to base the decision on speculation and little else. The fact that Anderson was discharged after she filed a complaint is not evidence that she was fired because of the complaint. On the other hand, there is evidence compelling the conclusion that she was fired because she abandoned the job.
Even if we assume that retaliation was a motivating factor for CRST when it discharged Anderson, an assumption not supported by any evidence, her claim still fails under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The United States Supreme Court recently held that, under Title VII, it is inadequate for a plaintiff to show that discrimination on a proscribed basis was one motivating factor for the adverse action. See Univ. of Texas S.W. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). Retaliation must-be the “but for” cause of the employer’s adverse decision. Id. at 2527.
If a desire to retaliate exists only among other possible reasons, the plaintiff has not met her burden. There must be evidence that retaliation was the actual reason for the adverse employment action. Anderson has not come close to meeting this burden. On the contrary, CRST had a good reason to fire her—she initially did nothing to accept her reassignment to team only with other female drivers; and she went missing in action and could not be located despite CRST’s efforts to find her. In effect, Anderson abandoned her post and was let go as a result.
⅜ ⅜ ⅜
I would affirm the district court’s decision in all respects.